# Martin, Com'r of Revenue, v. Wolfford.

(Special Court of Appeals of Kentucky.)

(Decided June 23, 1937.)

ROBERT T. CALDWELL for appellant.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF CHIEF JUSTICE CAMMACK OF SPECIAL COURT OF APPEALS—Reversing.

Appellee, G. W. E. Wolfford, instituted this action in the Franklin circuit court on April 20, 1937, and sought an injunction against the defendants, James W. Martin, Commissioner of Revenue, etc., to prevent them from enforcing penalties against him because of his failure to file an income tax report in accordance with the Kentucky Income Tax Law passed at a special session of the Legislature in 1936 (Acts 1936, 3d. Ex. Sess., c. 7), and approved by the Governor May 8, 1936, and being sections 4281b-1 to and including 4281b-39, Carroll's Kentucky Statutes 1936 Revision. Appellee alleged that said act is unconstitutional in so far as it affects his salary as circuit judge, because of its contravention of sections 161 and 235 of the Constitution of Kentucky. Defendants demurred to the petition, which was heard by the court and overruled. They declined to plead further, and a judgment was rendered granting the injunction to appellee, and adjudging said

act unconstitutional so far as it affected appellee's salary. Defendants excepted to the ruling of the court, prayed an appeal, and the action is here for the purpose of review by this court.

The question for determination is whether or not the Kentucky Income Tax Law diminishes the salary of a circuit judge in violation of sections 161 and 235 of the Constitution of Kentucky.

Section 4281b-14, Carroll's Kentucky Statutes annotated, Baldwin's 1936 Revision, provides:

"A tax is hereby annually levied for each taxable year upon every resident individual of this State upon his entire net income as herein defined for purposes of taxation (subject to exemptions provided in section 13 [section 4281b-13])."

Appellee contends that his salary will be diminished by the operation of the income tax act. The commonwealth asserts that the income tax does not attach to his salary, neither does it violate section 161 nor section 235 of the Kentucky Constitution; that appellee should report his salary as circuit judge with any other income that he may have received in 1936, and pay an income tax upon his net income for that year, after deducting credits for such exemptions as he may be entitled to under this act.

This court, in an opinion rendered on the 23d day of June, 1937, in the case of Reynolds Metal Company et al. v. James W. Martin, Commissioner of Revenue et al., 269 Ky. 378, — S. W. (2d) — , decided that the income tax is not a property tax, and that the Kentucky Income Tax Law is constitutional.

Section 4281b-14 admits of no uncertainty. It was the intention of the Legislature to include all public officers whether state, city, county, town, or municipal.

Section 161 of the Constitution provides:

"The compensation of any city, county, town, or municipal officer shall not be changed after his election or appointment, or during his term of office."

Section 235 provides:

"Salaries of public officers shall not be changed during the terms for which they were elected."

The Legislature of the Commonwealth of Kentucky has not enacted an income tax law heretofore, therefore

no cases appear in this state which bear directly upon the question involved in this appeal. Congress of the United States and Legislatures of several states have enacted income tax statutes, so we must consider a few opinions of the Supreme Court of the United States and the courts of last resort of some of the states to ascertain the trend of these courts on this question.

Attention is directed to the recent case (decided in 1915) of State ex rel. Wickham v. Nygaard, 159 Wis. 396, 150 N. W. 513, 516, Ann. Cas 1917A, 1065. The Supreme Court of Wisconsin in that case was dealing directly with the salaries of public officers, as affected by the income tax law of that state.

Section 26 of article 4 of the Wisconsin Constitution contains this provision:

"Nor shall the compensation of any public officer be increased or diminished during his term of office."

This provision of the Constitution embodies the same principle as do sections 161 and 235 of the Constitution of Kentucky.

The Wisconsin income tax law (St. 1913, sec. 1087m2, par. (c) provides that:

"All wages, salaries or fees derived from services; provided, that compensation to public officers for public service shall not be computed as a part of the taxable income in such cases where the taxation thereof would be repugnant to the constitution."

Section 1 of article 8 of the Wisconsin Constitution has these words: "Taxes may also be imposed on incomes."

That provision is similar to the following provisions in section 174, Constitution of Kentucky, which states:

"Nothing in this Constitution shall be construed to prevent the general assembly from providing for taxation based on income, licenses or franchises."

The court in the Nygaard opinion stated:

"The latter [meaning the Constitution] says taxes may be 'imposed on incomes.' We are not at liberty to rewrite this clause so as to read that taxes may be 'imposed on incomes, except where the in-

come consists of a salary received by a public officer.' We perceive very little room for construction, and, if a doubtful question were involved, it should not be resolved against the exercise of the taxing power by the state.''

The Wisconsin Supreme Court in this case decided that the salaries of public officers should be reported in their income tax returns.

The Supreme Court of Missouri had before it in the case of Taylor v. Gehner, etc., 329 Mo. 511, 45 S. W. (2d) 59, 60, 82 A. L. R. 986, the same question involved in this case. Section 33, article 6 of the Constitution of Missouri is similar to sections 161 and 235 of the Constitution of Kentucky. The respondent Gehner was circuit judge, and received a salary of $5,500. The court announced that:

''Taxes are proportional contributions imposed by the state upon individuals for the support of government and for all public needs. The power to tax is not granted by the Constitution; it is inherent in the Legislature. There are no restrictions or limitations upon the power, except such as are expressly imposed by the State and Federal Constitutions. * * * 'Nothing in the purpose of this clause of the Constitution to indicate that the judges were to be a privileged class, free from bearing their share of the cost of the institutions upon which their wellbeing if not their life, depends.' ''

The identical question before this court on this appeal was involved in the case of Poorman v. State Board of Equalization, 99 Mont. 543, 45 P. (2d) 307, 312. Section 29, article 8, Montana Constitution, provides:

''The justices of the supreme court and the judges of the district courts shall each be paid quarterly by the state, a salary, which shall not be increased or diminished during the terms for which they shall have been respectively elected.''

The Montana constitutional provision is like unto sections 161 and 235 of the Constitution of Kentucky. The Montana Supreme Court, construing the question involved on this appeal, announced:

''This 'tax on income,' then, is not levied upon property at all, but upon 'the acquisitions' of the

taxpayer, regardless of the source, and, although 'salaries' figure in the computation of 'gross income,' that the tax in certain instances reaches salaries is but incidental—an individual's salary is not even used as a yard stick for the measurement of such a tax. The constitutional prohibition against diminution of salaries cannot be evaded by any device conceived, however skillfully camouflaged, to take away from, or wihhold from, an officer a part of the salary to which he is entitled during the term for which he was elected or appointed; but it is idle to say that because of this prohibition an official can refuse to pay any species of tax whatever from his acquisitions by way of salary. * * * Every time such an official has the tank of his car filled with gasoline, he pays a state and a federal tax from his salary, and every time he purchases a package of cigarettes or attends a moving picture show * * * he pays a federal tax from his salary, and would certainly lose an argument with the merchant or the proprietor of the show house to the effect that the tax could not be collected from him.''

The Montana Supreme Court was dealing with a very pathetic state of facts in the Poorman Case, because Judge Poorman had served long, honorably, and ably upon the Supreme Court Bench of that state, and when he died he was a very poor man, and had only a small estate from which to pay his income tax. The court in a well-considered opinion held that his estate was liable to pay an income tax.

This is a tax ''upon every resident individual of this State.'' Section 4281b-14. ''Individual'' is defined: ''All natural persons whether married or unmarried, and also all trusts, estates and fiduciaries acting for other persons.'' Subsection (d), section 4281b-1. This tax is a ''personal debt'' against the taxpayer, section 4281b-33; and if not paid when due the taxpayer becomes liable to the commonwealth for penalty and interest, section 2481b-34. It is not a lien against his income or his property. The ordinary legal processes to collect debts by individuals are open to the commonwealth to collect this tax.

If this were a tax levied against the salary of a public official, there would be a diminution of his com-

pensation, and the tax would be violative of sections 161 and 235 of the Kentucky Constitution. In re Opinion of Justices, 225 Ala. 502, 144 So. 111; City of New Orleans v. Lea, 14 La. Ann. 197; and Commonwealth ex rel. Hepburn v. Mann, 5 Watts & S. (Pa.) 403 (decided in 1843).

Learned counsel for appellee cite in their brief Evans v. Gore, 253 U. S. 245, 40 S. Ct. 550, 551, 64 L. Ed. 887, 11 A. L. R. 519 (decided in 1920); Miles v. Graham, 268 U. S. 501, 45 S. Ct. 601, 69 L. Ed. 1067; and Long v. Watts (1922) 183 N. C. 99, 110 S. E. 765, 22 A. L. R. 277. An analysis of those cases will show that they are not applicable to the case at bar. Judge Walter Evans (a resident of Louisville) instituted an action against J. Rogers Gore, acting collector, etc., to recover a portion of income tax paid by him while Federal District Judge, and relied upon this provision in article 3, section 1, of the Constitution of the United States:

"The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for thier Services, a Compensation, which shall not be diminished during their Continuance in Office."

A portion of the tax paid by Judge Evans was levied under an Act of February 24, 1919, c. 18, 40 Stats. 1062, on his net income for the year 1919. Mr. Justice Van Devanter, speaking for the court, quoted from Alexander Hamilton in the Federalist No. 78, the following excerpt:

"The executive not only dispenses the honors, but holds the sword of the community. The Legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen are to be regulated. The judiciary, on the contrary, has no influence over either the sword or the purse; no direction either of the strength or of the wealth of the society; and can take no active resolution whatever. It may truly be said to have neither force nor will, but merely judgment. * * * 'The complete independence of the courts of justice is peculiarly essential in a limited Constitution.'"

The learned justice quoted from Chief Justice John Marshall as follows:

".Advert, sir, to the duties of a judge. He has

to pass between the government and the man whom that government is prosecuting; between the most powerful individual in the community, and the poorest and most unpopular. It is of the last importance, that in the exercise of these duties he should observe the utmost fairness. * * * The judical department comes home in its effects to every man's fireside: it passes on his property, his reputation, his life, his all. Is it not to the last degree important that he should be rendered perfectly and completly independent, with nothing to influence or control him but God and his conscience?''

The whole trend of the opinion in the Gore Case is to emphasize the thought that federal judges should not be influenced by the fear of Congress reducing their salaries.

Mr. Justice Holmes wrote a dissenting opinion in the Gore Case, which was concurred in by Justice Brandeis, and based it upon two propositions.

First. ''The tax on net incomes is a tax on the balance of a mutual account in which there always are some and may be many items on both sides. It seems to me that it cannot be affected by an inquiry into the source from which the items more or less remotely are derived. Obviously there is some point at which the immunity of a judge's salary stops, or to put it in the language of the clause, a point at which it could not be said that his compensation was diminished by a charge. If he bought a house the fact that a part or the whole of the price had been paid from his compensation as judge would not exempt the house. * * * Yet in such cases the advantages of his salary would be diminished. * * * At some point, I repeat, money received as salary loses its specific character as such. Money held in trust loses its identity by being mingled with the general funds of the owner. I see no reason why the same should not be true of a salary.''

Second. ''The Sixteenth Amendment justifies the tax, whatever would have been the law before it was applied. By that amendment Congress is given power to 'collect taxes on incomes from whatever source derived.' ''

The case of Miles v. Graham was decided chiefly upon the authority of the Gore Case, except that the Gore Case was dealing with a judge in office when the income ,tax law was passed, and in the latter case the income tax law was in existence at the time Miles took office. The Supreme Court held that it made no difference whether or not the law was in existence at the time the judge assumed his duties; that any effort made by Congress to diminish the salary of a federal judge was in violation of section 1 of article 3 of the Constitution of the United States.

The case of Longs v. Watts, Commissioner of Revenue, 183 N. C. 99, 110 S. E. 765, 22 A. L. R. 277, involved the salary of a judge of the superior court for the Fifteenth judicial district of North Carolina. Article 4, section 18 of the North Carolina Constitution provides:

"The General Assembly shall prescribe and regulate the fees, salaries, and emoluments of all officers provided for in this article; but· the salaries of the judges shall not be diminished during their ·continuance in office."

The conclusion reached by the Supreme Court of North Carolina in that case was that the tax diminished the salary of the superior court judge. The court in its opinion cited and relied upon the case of Evans v. Gore.

It is our conclusion that the case of Evans v. Gore and other federal cases following this opinion in construing section 1 of article 3 of the Federal Constitution have no application to the Kentucky Income Tax Law, nor to sections 161 and 235 of the Constitution of Kentucky, for the reason that this provision was inserted in the Federal Constitution for the specific purpose of barring Congress from destroying the judicial department under its unlimited taxing power. The Commonwealth of Kentucky did not grant, in its Constitution, unlimited taxing power to the Legislature. No similar clause was inserted in the Constitution of Kentucky because it was not necessary. Sections 161 and 235 of the Constitution were inserted for the purpose of protecting public officers, and in order to give assurance to them that after they are elected or appointed to office the Legislature has no power to change their compensations during their terms. The Constitution deals with their compensations as compensations

and not as exemptions of public officials from any tax that is levied on any other citizen of Kentucky. It was not the intention of the Legislature to exempt public officers from the payment of income tax, regardless of the source from which their income was derived. Its intention was to carry out the spirit of the Constitution in treating all of its citizens alike. A public officer seeks the opportunity to hold office, and when elected or appointed, assumes the responsibilities as such officer, and in turn receives his salary.

The commonwealth, cities, counties, and taxing districts must be supported or else governmental functions will cease, and those who are receiving their compensations from the commonwealth or its governmental agencies should bear their proportional part of the expense of maintaining the very governmental institutions from which they derive their livelihood.

The income tax act makes no exemptions of salaries of public officers holding office at the time the act was adopted. We find no reason why such exemption should apply to them. 46 Corpus Juris, 1027, sec. 268. State ex rel. Wickham v. Nygaard, 159 Wis. 396, 150 N. W. 513, Ann. Cas. 1917A, 1065; Poorman v. State Board of Equalization, etc., 99 Mont. 543, 45 P. (2d) 307.

Wherefore: The judgment is reversed, and the case remanded for judgment to be rendered refusing the injunction sought by appellee, and for such proceedings as are consistent with this opinion.

Whole court sitting.

Dietzman, McMurry, and Prewitt, Special Justices, dissent.

Dietzman, Special Justice (dissenting).

I am unable to concur in the opinion of the majority in this case. The question presented is whether or not officers within the protection of sections 161 and 235 of the State Constitution, and in office at the time of the passage of our State Income Tax Act (Acts 1936, 3d Ex. Sess., c. 7), are subject, with respect to the salaries they were receiving by law at the time the act was passed, to this income tax. The majority opinion holds that to subject them to the tax with respect to such salary does not work a change of their compensation within the meaning of the aforesaid constitutional provisions set out in full in that opinion.

I concede that in so far as officers elected or appointed hereafter are concerned, they will be subject to the tax. Nor does anything in the case of Miles v. Graham, 268 U. S. 501, 45 S. Ct. 601, 69 L. Ed. 1067, militate to the contrary. In that case the Supreme Court had before it the question whether a Judge of the Court of Claims, appointed after the effective date of the federal income tax law, and whose salary was fixed by a statute passed subsequent to the passage of the income tax act, was liable with respect to his salary as such judge to the federal income tax. The court held as a matter of statutory construction that the act fixing the salary of the judge meant the salary to be exempt from the tax. The court did not decide the question of the power of Congress to subject that salary, nor salaries of any federal judges appointed after the effective date of the federal income tax law to the tax imposed by that act. That this is so may be demonstrated by the opinion in the case of Williams v. U. S., 289 U. S. 553, 53 S. Ct. 751, 77 L. Ed. 1372, wherein it was held that a Judge of the Court of Claims sits in a legislative court, and not a constitutional court, and his salary is not protected against change by the Federal Constitution. So we see Judge Graham's salary could have been made subject to the income tax had Congress seen fit to do so. The court in this case simply held that Congress had not seen fit to do so.

It has been settled time and again that under our State Constitution a change in the compensation of constitutional officers may be effective as to those who are elected after such change is made, although not effective as to those in office at the time such change is made. See Adams v. Slavin, 225 Ky. 135, 7 S. W. (2d) 836; Greenup County v. Spears, 259 Ky. 114, 81 S. W. (2d) 905. It is conceded by the appellants that the federal government cannot constitutionally lay an income tax on the appellee herein with respect to the salary he receives from the state. Equally is it true that the State of Kentucky cannot constitutionally lay an income tax on federal office holders with respect to the salary they receive for their services as such from the United States Government. Why is this so? It is because, as the courts all say, such a tax, although imposed on the individual, has a very direct relationship to the salary he receives, and in effect burdens the same.

This being true, the officer receiving the salary is exempt from so much of the tax as is levied with respect to such salary because neither the state nor the federal government can constitutionally burden the operations of the other's government. New York ex rel. Cohn v. Graves, 57 St. Ct. 466, 81 L. Ed. ——, 108 A. L. R. 721. The essence of such holding is the "direct burden" proposition. And so those cases headed by Evans v. Gore, 253 U. S. 245, 40 S. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519, and among which are Long v. Watts, 183 N. C. 99, 110 S. E. 765, 22 A. L. R. 277, and Green v. Dupont (Del. Super.) 180 A. 437, in the latter of which, as well as in the annotation to be found in 82 A. L. R. 989, may be found a list of them, are all based on this "direct burden" theory, and being so based, hold that to subject the office holder protected by constitutional provisions such as here involved to an income tax with respect to his salary fixed before the tax law was enacted, would be to work a change in that compensation not allowed by such constitutional provisions. Such reasoning is to my mind sound and conclusive.

The argument made in the majority opinion following a like argument in the dissenting opinion of Judge Holmes in the Evans Case, supra, to the effect that there is no difference between the effect of an income tax on salary, and the effect on such salary of the taxes a judge has to pay out of his salary on a house he owns, or on a gallon of gasoline he may buy wherewith to run his automobile, or an excise tax that he may pay on a ticket to get into a moving picture show, disregards what Justice Holmes also says in his book on the Common Law, page 312:

"The distinctions of the law are founded on experience, not in logic. It therefore does not make the dealings of men dependent upon a mathematical accuracy."

Lord MacCauley, in his Essay on History, states the same proposition in these words:

"All questions in morals and politics are questions of comparison and degree."

The effect of an income tax on salary is so markedly different from the exceedingly indirect effect of a tax on judge's home or a tax on a moving picture ticket

on that salary, that argument to sustain the proposition is superfluous. Such an indirect burden does not constitutionally affect the salary. But a direct burden, such as an income tax, must in the light of the authorities be conceded, in my judgment, to come within the constitutional prohibitions against a change in compensation.

The Wisconsin case, cited in the majority opinion, went off entirely upon interpretation put by the Supeme Court of Wisconsin on the Income Tax Amendment to the State Constitution. The other cases cited in support of the decision here made, follow the reasoning of the dissenting judges in Evans v. Gore. A reading of the annotation in 82 A. L. R. 989, wherein the cases on this matter are gathered, will disclose that the weight of authority is contrary to the majority opinion herein delivered. I believe the weight of authority is on the side of better reasoning.

For the reasons herein set out, I am compelled to dissent from the decision of the majority, and believe that the opinion of the lower court should be affirmed.

I am authorized to state that Special Justices Prewitt and McMurry concur in this dissent.