STATE of Missouri, Respondent,

v.

Margaret KESTERSON (Hembree), Appellant.

No. 51747.

Supreme Court of Missouri, Division No. 2.

June 13, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Harry D. Pener, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Pohlman & Costello, William H. Costello, Kansas City, for appellant.

FINCH, Judge.

Defendant, charged under the Habitual Criminal Statute, § 556.280 (all statutory references are to RSMo 1959, V.A.M.S., unless otherwise indicated), was found guilty of stealing over $50 by means of deceit, § 560.156, and was sentenced to imprisonment for ten years with credit given for jail time. Defendant, after an unavailing motion for new trial, appealed, claiming insufficiency of the information to charge a crime, error in the admission of evidence, and insufficiency of the verdict.

The amended information on which defendant was tried alleged various aliases and prior convictions and then stated as follows: " * * * and that thereafter, between December 22, 1964, and January 18, 1965, at the County of Jackson and State of Missouri, she did then and there unlawfully, feloniously, and intentionally steal, by means of deceit, certain property, to wit, lawful money of the United States of the value of Two Thousand Five Hundred Sixty-four and no/100 ($2564), the property of Jennie L. Walker against the peace and dignity of the State."

In order to consider defendant's attack on the sufficiency of the information, we deem it necessary to summarize the evidence offered on behalf of the State. It was as follows: Defendant inserted an ad in the "Situations Wanted" section of the Kansas City Star, seeking a place as companion and light housekeeper for an elderly person. Mrs. Jennie Walker, aged 74, answered the ad and conversations between her and defendant resulted in an arrangement whereby defendant was to work for Mrs. Walker as a light house-

keeper. At their first meeting defendant told Mrs. Walker that her husband, Robert O. Kesterson, had died some months before and that his estate was pending in the Probate Court at Sedalia. Defendant told Mrs. Walker that she was short of money and would need money until the probate proceeding was settled, but after that time she would have plenty of money to care for both of them. The first conversation was in December 1964 and the estimated time given by defendant as to when the estate would be closed was March 1, 1965. Defendant stated she would move in with Mrs. Walker as soon as the estate was settled but meanwhile she brought clothes and left them at the house. Various meetings and conversations between Mrs. Walker and defendant occurred in December 1964 and in January and February 1965. For the purposes of this appeal, it is not necessary to detail all of them. It can be said, in summary, that defendant in those conversations represented that the estate was substantial and that it included farm machinery, a liquor store at Sedalia, a farm in Morgan County, Missouri, a farm in Iowa, some property at 7208 Santa Fe, in Johnson County, Kansas, and various securities, including a mortgage on a motel at Loveland, Colorado. At various times defendant stated to Mrs. Walker that she was short of money, and Mrs. Walker on those occasions loaned or advanced money to defendant. The first time it was for a trip to a funeral in Iowa, although the amount advanced in that instance was not included in the amount charged in the information. Some funds were advanced when the defendant advised Mrs. Walker that she had arranged with the Probate Judge at Sedalia to give money from the estate as gifts and that she was going to make gifts out of the estate to Mrs. Walker, but needed cash, which she did not have, in order to pay taxes thereon. On one occasion the money was to cover closing costs and insurance on the property in Johnson County, Kansas, which she was going to take over as a place where they would live, pursuant to

authorization which she said the Probate Judge had given. Other money was for trips to Loveland, Colorado, and for use in connection with allegedly working out an arrangement whereby she would receive a deed to the motel property at Loveland, Colorado. A one-half interest therein, according to defendant, was to be conveyed to Mrs. Walker. Photographs of the motel, plus a real estate contract, were exhibited to Mrs. Walker. When she asked defendant why her name was not on the contract, defendant replied that this would be done by the Probate Judge when the estate was settled. Mrs. Walker kept a memorandum of the dates and amounts which she advanced to the defendant, and this was introduced in evidence. In addition, the State offered as an exhibit an executed copy of a will of the defendant which she had given to Mrs. Walker under which she proposed to leave the residue of her estate to Mrs. Walker. A total of $2564, not including the amount for the trip to Iowa, was given by Mrs. Walker to defendant on various occasions in December 1964 and January 1965. There were approximately ten separate instances in which money was advanced, the amounts thereof ranging from $80 to $1200. The State's evidence disclosed that there was no estate of Robert O. Kesterson in the Probate Court at Sedalia, that the Probate Judge there did not know defendant, that defendant had worked for one R. O. Kesterson at Versailles, Missouri, but that she was not married to him and that he was still living. Kesterson, incidentally, did not own any land in Morgan or Pettis Counties. The State's evidence also disclosed that there is only one 7200 block on a Santa Fe street in Johnson County, Kansas. It is located near or in Overland Park. Defendant had no interest in property located at that address and the recorder of that county found nothing in connection with Robert O. Kesterson, R. O. Kesterson or defendant under any of her aliases.

The jury returned a verdict finding "defendant Margaret Ryan, Margaret Kes-

terson, alias Louise Campbell, guilty of Stealing Over $50 by Means of Deceit as charged." The court, after hearing evidence as to prior convictions, made the necessary findings with reference thereto and fixed defendant's punishment.

The pertinent language of § 560.156, the section under which defendant was charged, is contained in paragraph 2 of the section and reads as follows: "It shall be unlawful for any person to intentionally steal the property of another, either without his consent or by means of deceit."

■ It is obvious that the amended information charged defendant essentially in the language of the statute. She was charged with intentionally stealing by deceit money in the amount of $2564 from Jennie L. Walker between specified dates. The State contends that since the information against defendant does conform substantially to the language of § 560.156, it is sufficient. Generally, it is permissible and sufficient for an indictment or information to charge the offense in the language of the statute alleged to be violated if the statute sets forth all the constituent elements of the offense. State v. Bersch, 276 Mo. 397, 207 S.W. 809; State v. Futrell, 329 Mo. 961, 46 S.W.2d 588; State v. Varsalona, Mo., 309 S.W.2d 636; 27 Am. Jur., Indictments and Informations, §§ 100 and 101, pp. 659–660. However, there are qualifications of this rule. This has been expressed by this court in these words: "Such is not the case if the statute creating the offense uses generic terms in defining the offense and does not individuate the offense with such particularity as to notify the defendant of what he or she is to defend against." State v. Fenner, Mo., 358 S.W.2d 867, 870; State v. Varsalona, supra, 309 S.W.2d 1. c. 642. See also 27 Am.Jur., Indictments and Informations, § 103, p. 662, where it is stated: "As the courts have pointed out, the words of the statute may be sufficient to describe or legally characterize the offense denounced, and yet be wholly in-

sufficient to inform the accused of the specific offense of which he is accused, so as to enable him to prepare his defense or plead his conviction or acquittal as a bar to further prosecution for the same offense, as where the statute characterizes the offense in mere general or generic terms, or does not sufficiently define the crime or set forth all of its essential elements."

■ Section 560.156 is a new statute enacted in 1955. It replaced numerous statutes repealed at that time, one of which was § 561.370 which had covered obtaining money by false pretenses. The new statute was an attempt to deal with all forms of stealing, including false pretenses, in one statute. Since § 560.156 is a relatively new statute, the number of reported cases thereunder involving stealing by deceit is small. No case was cited by counsel, nor have we found any, which involved and considered the sufficiency of an information or indictment framed solely in the language of the statute, as is the one in this case. The cases which we have found involve informations containing more detailed allegations as to what happened and with what defendant is charged.

In State v. Perkins, Mo., 380 S.W.2d 433, cited and relied on by the State, the court considered a contention that the trial court should have sustained a motion for a bill of particulars with reference to an information charging the defendant therein with stealing by deceit under § 560.156. This court held that it was not error to overrule the motion for a bill of particulars, but in that connection had this to say with reference to the content of the information, 380 S.W.2d 1. c. 435: " * * * the information charges that Lola 'in the City of St. Louis, between June 20, 1959 and the 5th day of February 1961, did unlawfully, feloniously and intentionally steal, take and carry away' $79,661.00, the property of Hollybrook Land Company in the care and custody of Robert N. Amacker, 'by means of certain false

pretenses, representations and deceit, to wit' that Lola falsely represented to Amacker that she 'was the executrix under the will of one Magnolia J. Ward (Pittman) deceased; that there was certain real and personal property which were assets in the estate * * * that the value of the assets in said estate was greatly in excess of the amount of the monies of the Holly-brook Land Company * * * so obtained as aforesaid from Robert Amacker, and that the advancement of said monies by the said Robert Amacker to said Lola Lorene Perkins * * * would enable her to close and settle the aforesaid estate, and that she would then so close and settle said estate and would, out of the assets of said estate' repay the sums advanced by Amacker, that said representations and pretenses were known to Lola to be false and untrue and were relied on by Amacker with the result that Lola got and stole $79,661." In connection with its ruling that the information was sufficient, the court said, 380 S.W.2d l. c. 435: "It is neither necessary nor desirable that informations under the revised statute be reduced to a rigid formula; it is sufficient to say that this information plainly describes an offense defined in the statute and, as will appear from a recital of the facts, concisely covers the conduct relied on as constituting a theft by deceit." Obviously, that information advised defendant specifically as to the series of representations charged to constitute the deceit or false representations. No such recital of alleged false representations appears in the amended information against defendant herein. The Perkins case is not authority for the sufficiency of the information in this case.

In State v. Fenner, supra, the information alleged that defendant intentionally stole by deceit the sum of $2000 from the Columbia Savings Bank, but went on to recite that defendant had obtained a loan for $2000 from the bank by fraudulently representing ownership of certain property which was represented to be free and clear of liens, whereas some of the property was not owned by defendant and some had been previously mortgaged. The case actually was decided on the insufficiency of the evidence to support a verdict of guilty under the statute, but Judge Dalton did discuss the information and the statute under which it was filed. After pointing out that some statutes are in generic terms which require more than a mere recital of statutory language in an indictment or information thereunder, he said, 358 S.W.2d l. c. 870: "We find this statute to be of the latter class. It is vitally important that every man accused of a crime should have a reasonable opportunity to know what he is charged with, and that he not be called upon to meet evidence at the trial which he could not have anticipated from the charge filed against him." This statement was dictum, but it does say that an information under § 560.156 which charges stealing by deceit requires more than a mere recital that defendant stole X dollars from Y at a specified time by deceit. Even if it had held the information in Fenner sufficient, such decision would not be decisive of this case, since it gave specific information as to the transaction on which defendant was charged.

We also should note that informations under the predecessor false pretenses statute, § 561.370, were required to contain a recital of the representations claimed to be false. State v. Ruwwe, Mo., 242 S. W. 936.

Not only does defendant claim that the information did not allege what the deceit was, but she also complains that it did not recite that the victim relied thereon. Such a recital was necessary in informations under the predecessor statute, § 561.-370, involving false representations. State v. Norman, Mo., 232 S.W. 452. Such allegations also are required under the so-called confidence game statute, § 561.450. State v. Stegall, Mo., 353 S.W.2d 656; State v. Cunningham, Mo., 380 S.W.2d 401. The reasoning which required that the state allege in the information and

prove that the victim relied on the misrepresentation in cases under §§ 561.450 and 561.370 also is applicable to charges of stealing by deceit under § 560.156. Unless the victim does rely on the conduct which constitutes the deceit, the stealing is not accomplished by deceit and the offense is not proved.

 We hold that § 560.156, in describing the offense of theft by deceit, does use generic terms and that it is necessary that indictments or informations thereunder recite sufficiently the conduct constituting a theft by deceit with which a defendant is charged as to notify him as to the charge against which he must defend himself and likewise be sufficient to bar further prosecution for the same offense. We also hold that the information must charge that the victim relied on the misrepresentations with which defendant is charged. The information herein did neither.

There is one additional question we should consider. The State's brief suggests in its argument that the information should not be found insufficient since defendant did not attack it before trial by a motion to dismiss or a motion for a bill of particulars. The first attack thereon came in a motion to quash the information filed at the close of the State's case. No authorities are cited. We presume that reference to Criminal Rule 24.03, Vernon's Annotated Missouri Rules, is intended. That rule provides that the court may direct a bill of particulars where the information alleges the essential facts constituting the offense but fails to inform defendant of the particulars sufficiently to prepare his defense. A time table for such a motion is prescribed. It is true that failure of the indictment or information to give all desired details may be waived by failure to request a bill of particulars. State v. Bright, Mo., 269 S.W.2d 615; State v. Haynes, Mo., 329 S.W.2d 640; City of St. Louis v. Capitol Vending Co., Mo.App., 374 S.W.2d 519; 27 Am.Jur., Indictments and Informations, § 187, p. 733. However, when the omissions in the indictment or information are of such fundamental character as to make it wholly insufficient and invalid, as we have held the information herein to be, such insufficiency is not waived by failure to raise the question at the early stages. 27 Am.Jur., Indictments and Informations, § 187, p. 731. Under the circumstances, the motion to quash the information filed after the close of the State's case was sufficient to raise and preserve the question.

In view of our conclusion that the information was fatally defective, there is no occasion to review other assignments of error. The judgment is reversed and the cause remanded.

All of the Judges concur.